```
Approved:  _____
           Timothy V. Capozzi / Jilan J. Kamal
           Assistant United States Attorneys

Before:    THE HONORABLE SARAH NETBURN
           United States Magistrate Judge
           Southern District of New York
```

FILED BY __TM__ D.C.
Feb 26, 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**21 MAG 2223**

CASE NO. 21-8068-BER

- - - - - - - - - - - - - - - - - - X
                                    :       **SEALED COMPLAINT**
UNITED STATES OF AMERICA            :
                                    :       Violations of
       - v. -                       :       18 U.S.C. §§ 1343,
                                    :       1028A
ELLIOT SMERLING,                    :
                                    :       COUNTY OF OFFENSE:
              Defendant.            :       NEW YORK
                                    :
- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

TIMOTHY LUCEY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Wire Fraud)

1. From at least in or about December 2020 through at least in or about February 2021, in the Southern District of New York and elsewhere, ELLIOT SMERLING, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, SMERLING sought and obtained an approximately $95,000,000 collateralized loan for his private equity fund on the basis of a forged audit letter, falsified subscription agreements, and falsified bank account statements, and in furtherance of the scheme transmitted, and caused to be transmitted, emails and transfers of funds into and out of the Southern District of New York.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
### (Aggravated Identity Theft)

2.   From at least in or about December 2020, through in or about February 2021, in the Southern District of New York and elsewhere, ELLIOT SMERLING, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony enumerated in Title 18, United States Code, Section 1028A(c), to wit, SMERLING used the name and forged the signature of the Chief Investment Officer ("Chief Investment Officer-1"), of an endowment fund of a private university based in Manhattan, New York ("University Endowment Fund-1"), on a falsified subscription agreement purporting to commit $45,000,000 from University Endowment Fund-1 to SMERLING's private equity fund, during and in relation to the wire fraud offense charged in Count One.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.   I am a Special Agent with the FBI and have been since 2004. Prior to 2015, I was also an associate general counsel with the FBI for approximately ten years. Since 2015, I have been assigned to the Complex Fraud, Financial Crime Division, in the FBI's New York Field Office. In that capacity, I been involved in all aspects of white-collar crime investigations, including, but not limited to, financial analysis, undercover operations, source operations, executing search warrants, and carrying out arrests. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of emails, reports, and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

### Entities & Individuals

4. Based on my review of publicly available information from the website of the Delaware Department of State, publicly available filings with the Securities and Exchange Commission ("SEC"), and my review of banking records, I have learned the following, in substance and in part:

   a. "Limited Partnership-1" is a limited liability partnership incorporated in Delaware in or around November 5, 2018. It is the limited partnership of investors in "Private Equity Fund-1," which is based in West Palm Beach, Florida.

   b. "General Partnership-1" is a limited liability company incorporated in Delaware in or around November 5, 2018. It is the general partner of Private Equity Fund-1.

   c. At all relevant times, ELLIOT SMERLING, the defendant, was the Managing Principal of General Partnership-1, and the founder and managing director of Private Equity Fund-1.

   d. "Victim Bank-1" is a commercial bank headquartered in California. It maintains branches in various states, including an office located in Manhattan, New York.

   e. "Commercial Bank-1" is a multinational financial services company, with its Americas headquarters located in Manhattan, New York.

   f. "Audit Firm-1" is an international network of accounting, audit, tax, and professional services firms, with 740 allied firms in the United States. As relevant here, Audit Firm-1 maintains offices in Miami, Florida, and in Manhattan, New York.

   g. "University Endowment Fund-1" is the investment fund of a private university based in Manhattan, New York. Its Chief Investment Officer, "Chief Investment Officer-1," is responsible, *inter alia*, for executing investment agreements on behalf of University Endowment Fund-1.

   h. "Investment Manager-1" is in the investment management division of a banking and financial services firm headquartered in Manhattan, New York.

5. Based on my conversations with witnesses, review of documents and emails received from witnesses, and review of

financial records obtained pursuant to subpoena, I have learned that ELLIOT SMERLING, the defendant, solicited and obtained on behalf of General Partnership-1, a loan of approximately $95,000,000 from Victim Bank-1, which was secured by purported capital commitments made by investors in Limited Partnership-1. SMERLING obtained the approximately $95,000,000 loan on the basis of falsified documents and material misrepresentations, including:  (1) a forged audit letter, purportedly prepared by Audit Firm-1, attesting to the audited financial statements of Limited Partnership-1; (2) forged subscription agreements that falsely represented that University Endowment Fund-1 and Chief Investment Officer-1 had committed $45,000,0000 to fund Limited Partnership-1 and that Investment Manager-1 and the Chief Executive Officer of Investment Manager-1 had committed $40,000,000 to fund Limited Partnership-1; and (3) falsified bank records purporting to attest to a $4,500,000 wire transfer from University Endowment Fund-1 to Limited Partnership-1.

### **SMERLING Falsifies Records to Obtain an Approximately $95,000,000 Loan**

6.    Based on my review of emails and records obtained from Victim Bank-1, conversations with witnesses from and representatives of Victim Bank-1, and review of financial records, I have learned the following, in substance and in part:

a.    On or around December 1, 2020, ELLIOT SMERLING, the defendant, contacted an employee of Victim Bank-1 concerning SMERLING's interest in acquiring an approximately $95,000,000 loan for SMERLING's $500,000,000 private equity fund, Limited Partnership-1.  The loan sought by SMERLING would substitute for an existing line of credit SMERLING had secured from  Commercial Bank-1, where Limited Partnership-1 purported to have an existing line of credit with an outstanding loan balance equal to the amount sought by SMERLING from Victim Bank-1.  The employee of Victim Bank-1 referred SMERLING to Witness-1, a Director in the Global Fund Banking Group at Victim Bank-1.

b.    Thereafter, in or around December 2020, Witness-1 requested from SMERLING materials concerning Limited Partnership-1 and General Partnership-1 in order to evaluate SMERLING's loan request.  In response, SMERLING sent Victim Bank-1 via email materially false materials, the veracity of which Victim Bank-1 relied upon in ultimately deciding to make the loan sought by SMERLING, including:

    i. An audit letter (the "Audit Letter"), purportedly prepared by Audit Firm-1, attesting to the sound finances of Limited Partnership-1.

    ii. Subscription agreements purportedly signed by investors in the fund, including an agreements reflecting a purported commitment of $45,000,000 by University Endowment Fund-1 and the purported signature of Chief Investment Officer-1 ("Subscription Agreement-1") and an agreement reflecting a purported commitment of $40,000,000 by Investment Manager-1 and the purported signature of Chief Executive Officer of Investment Manager-1 ("Subscription Agreement-2").

    iii. A table (the "Capital Commitment Table") listing $500,000,000 in paid and unpaid capital commitments purportedly made to Limited Partnership-1 as of December 13, 2019, including a purported $45,000,000 commitment by University Endowment Fund-1, consisting of a "call amount" of $4,500,000 and an "unpaid commitment" of $40,500,000 as of that date, as well as a purported $40,000,000 commitment by Investment Manager-1, consisting of a "call amount" of $4,000,000 and an "unpaid commitment" of $36,000,000 as of that date.

  c. Following receipt of the materials, employees of Victim Bank-1, including at least one employee based in Victim Bank-1's office in Manhattan, New York, reviewed the materials as part of Victim Bank-1's diligence process.

  d. During in or around December 2020, Witness-1 participated in several calls with SMERLING, during which SMERLING answered Witness-1's questions concerning General Partnership-1 and Limited Partnership-1 and the materials provided by SMERLING.

  e. On or around January 7, 2021, Witness-1 wrote an email to the Chief Financial Officer of Private Equity Fund-1, with a copy to SMERLING, in which Witness-1, in substance and in part, advised that Victim Bank-1 was in the process of finalizing its approvals for the loan. Witness-1 requested bank statements "evidencing receipt of the most recent capital call." On the same date, SMERLING replied with an email to which he attached a December 2019 bank statement (the "Bank Statement") for an account purportedly held in the name of Limited Partnership-1 at Commercial Bank-1's Americas headquarters in Manhattan, New York. The statement reflected wires into the account with a combined value of $50,000,000, including a

5

purported wire of $4,500,000 from University Endowment Fund-1 and a purported wire of $4,000,000 from Investment Manager-1.

   f. Thereafter, SMERLING, on behalf of Limited Partnership-1 and General Partnership-1, and Victim Bank-1 executed a Loan and Security Agreement, with an effective date of February 3, 2021. Among other terms, the agreement included several materially false "Representations and Warranties" made by SMERLING on behalf of Limited Partnership-1 and General Partnership-1, including, in substance and in part:

      i. Representations that "[t]rue and complete" copies of each investors' subscription agreement had been provided to Victim Bank-1 and that the signatures of such investors appearing on the subscription agreements "truly, accurately and completely" set forth each investors' capital commitment and correct legal name;

      ii. Representations that Limited Partnership-1 and General Partnership-1 had "full power and authority" to grant a security interest in its right to require capital contributions to be made by its investors;

      iii. Representations that the investor subscription agreements were "in full force and effect in the form presented to" Victim Bank-1 and that the subscription agreements "constitute[d] binding obligations" on each investor; and

      iv. Representations that "[n]o written factual representation, warranty or other statement" of Limited Partnership-1 given to Victim Bank-1 contained "any untrue statement of a material fact or omits to state a material fact . . . ."

   g. In negotiating the Loan and Security Agreement with Victim Bank-1, SMERLING, acting on behalf of Limited Partnership-1 and General Partnership-1, was represented by attorneys based in the New York office of a Miami-based law firm.

   h. On or about February 3, 2021, in reliance on the representations made by SMERLING, Victim Bank-1 wired approximately $95,000,000 to Commercial Bank-1 in Manhattan, New York for the benefit of Limited Partnership-1.

7. Based on my conversations with an Associate General Counsel of Audit Firm-1, I have learned the following, in substance and in part:

    a. The Audit Letter was not prepared by Audit Firm-1.

    b. The address for Audit-Firm-1 that appeared in the letterhead of the Audit Letter is an address at which Audit Firm-1 has not operated for several years.

    c. The language and conventions of style in the Audit Letter appeared to be more consistent with letters issued by an audit firm other than Audit Firm-1.

    d. To date, Audit Firm-1 has found no indication that ELLIOT SMERLING, the defendant, Limited Partnership-1, or General Partnership-1 were clients of Audit Firm-1, or its affiliates, at any time relevant to this complaint.

8. Based on my communications with representatives of University Endowment Fund-1, I have learned the following, in substance and in part:

    a. Chief Investment Officer-1 has no knowledge of ELLIOT SMERLING, the defendant, Limited Partnership-1, or General Partnership-1.

    b. The purported signature of Chief Investment Officer-1 appearing on Subscription Agreement-1 is not Chief Investment Officer-1's signature.

    c. To date, University Endowment Fund-1 has found no indication that University Endowment Fund-1 in fact made the $4,500,000 wire reflected in the Bank Statement or made any other investment or capital commitment to ELIOT SMERLING, the defendant, Limited Partnership-1, or General Partnership-1.

9. Based on my communications with representatives of Investment Manager-1, I have learned the following, in substance and in part:

    a. The purported signature of the Chief Executive Officer of Investment Manager-1 appearing on Subscription Agreement-2 is highly unlikely to be legitimate.

   b. To date, Investment Manager-1 has found no indication that Investment Manager-1 in fact made the $4,000,000 wire reflected in the Bank Statement or made any other investment or capital commitment to ELIOT SMERLING, the defendant, Limited Partnership-1, or General Partnership-1.

  WHEREFORE, I respectfully request that a warrant be issued for the arrest of ELLIOT SMERLING, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s authorized electronic signature
_____
TIMOTHY LUCEY
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission
of this Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1, this 25 th day of February, 2021

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK